IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah M. Spruiel,                              :
                              Petitioner         :
                                                 :
              v.                                 :
                                                 :
Unemployment Compensation                        :
Board of Review,                                 :        No. 2133 C.D. 2013
                              Respondent          :        Submitted: July 11, 2014


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: August 12, 2014


              Deborah M. Spruiel (Claimant) petitions this Court for review of the
Unemployment Compensation Board of Review's (UCBR) November 8, 2013 order
affirming in part and reversing in part the Referee's decision, granting Claimant
Unemployment Compensation (UC) benefits under Section 401(d)(1) of the UC Law
(Law),[1] and determining Claimant ineligible for UC benefits under Section 402(e) of
the Law due to willful misconduct. The issues for this Court's review are whether the
UCBR erred by: (1) concluding that Claimant engaged in willful misconduct; (2) not
finding Hair Masters III, Inc.'s (Employer) work rule unreasonable; (3) disregarding
evidence that Claimant was given permission to leave work; and, (4) determining that
Claimant's physical condition did not constitute an emergency. Upon review, we
affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§
801(d)(1) (relating to ability to work and availability for suitable work), 802(e).

Claimant worked for Employer as a stylist between May 18, 2012 and June 15, 2013, when she was discharged. Claimant was originally employed full-time; however, at the time of her discharge worked only part-time in order to attend school. Claimant's part-time hours consisted of two hours per day Monday through Friday, and 10:00 a.m. to 7:00 p.m. on Saturday. On Saturday, June 15, 2013, Claimant became ill at work. She requested and obtained permission from Employer's manager Mr. Lee (Lee) to leave at approximately 5:00 p.m. She did not notify Employer's president Sora Park (Park) of her illness or that she left before the end of her shift. Employer terminated Claimant's employment for failing to follow procedure before leaving work on June 15, 2013.

Claimant filed for UC benefits on June 25, 2013. On July 15, 2013, the Duquesne UC Service Center (UC Service Center) issued a Notice of Determination (Determination) finding Claimant ineligible for UC benefits under Section 402(e) of the Law, and eligible for benefits under Section 401(d)(1) of the Law. Claimant appealed. A Referee hearing was held on August 15, 2013.

Park testified at the Referee hearing that when Claimant was hired, Claimant executed an agreement in which she declared: "I [Claimant] will not be late for work. If [I am] going to be late or not coming to work[, Employer] would like to be notified one week before." Certified Record (C.R.) Item 3; *see also* C.R. Item 9 Notes of Testimony, August 15, 2013 (N.T.) at 14, Ex. 6. On May 18, 2012, Claimant signed Employer's "Employee Agreement," wherein she acknowledged that being late to work 3 times in one month would subject her to dismissal, and that failing to call or show up for work would be deemed an immediate resignation. C.R. Item 3; *see also* N.T. Ex. 7. Park declared that Claimant also reviewed Employer's Employee Handbook. Section 5 of the Employee Handbook, entitled "Safety in the Workplace," states in pertinent part:

2

> Each employee . . . must practice safety awareness by thinking defensively, anticipating unsafe situations and reporting unsafe conditions immediately.
>
> Please observe the following precautions:
>
> > 1. Notify the president of any emergency situation. **If you** are injured or **become sick at work, no matter how slightly, you must** <u>inform the president</u> **immediately.**
> >
> >  . . . .
> >
> > A violation of a safety precaution is in itself an unsafe act. **A violation may lead to disciplinary action, up to and including discharge**.

N.T. Employer Ex. 1, Section 5 at 1; *see also* N.T. at 8-9, 11, 13-14 (emphasis added). On May 21, 2012, Claimant signed the Employee Handbook acknowledgement affirming her understanding of its contents, and that she should contact the president or a manager with questions about the policies therein. Employer Ex. 3; *see also* N.T. at 9, 11, 13-14.

Park further reported that Claimant had a history of being late and calling off work. N.T. at 9-10; *see also* N.T. Employer Ex. 2. In the weeks leading up to her discharge, Claimant was late for work on June 3, 6, 7, 12, 13, 14 and 15 without notifying Employer. N.T. at 10, 14; *see also* N.T. Employer Ex. 2. Claimant called off work June 4, 5, 10 and 11. N.T. at 10; *see also* N.T. Employer Ex. 2. Although Park could not recall when, Park asserted that she spoke with Claimant about her attendance. Park claimed that she did not receive a call from Claimant before she left work on June 15th. Rather, Park was informed by vendors that Claimant left the salon. Park maintained that she called Claimant's cell phone that day and the next, but Claimant did not return her calls. In Employer's Questionnaire, Employer marked that Claimant was discharged for absenteeism and tardiness. C.R. Item 3, Employer Questionnaire at 1.

Claimant testified before the Referee that severe cramps due to endometriosis caused her significant pain on June 15, 2013.[2] Claimant stated that she attempted to complete her shift, but her pain worsened to the point that she had to leave early. She explained her situation to Lee, who gave her permission to leave at 5:00 p.m. Claimant admitted that despite Employer's work rule, she did not notify Park before she left the salon on June 15, 2013. She claimed that Lee called Park. She recounted that business at the salon was dead and there was another stylist to cover for her. Claimant explained that she learned of her discharge after a customer attempted to schedule an appointment, and Employer told the customer Claimant no longer worked at the salon. Claimant contacted Lee to discuss why her employment was terminated. She claimed that Park never called her. She also admitted that she previously had been late to work, but not "several times." N.T. at 20.

Claimant acknowledged that she received the Employee Handbook, and was aware that she was required to immediately notify Employer's president in the event of illness at work. She asserted that "they don't really operate by that handbook. So I'm not sure of the validity of this handbook, but I do know . . . because they're not always available, . . . my direct contact was Brian Park. . . . [W]hen he wasn't there, it was [Lee]." N.T. at 21-22.

On August 16, 2013, the Referee reversed the UC Service Center's Determination granting Claimant benefits in accordance with Section 401(d)(1) of the Law because Claimant was able and available for work, and in accordance with Section 402(e) of the Law because Employer did not follow its policy and discharged Claimant when she was late for work three times in one month. Employer appealed to the UCBR. On November 8, 2013, the UCBR affirmed the Referee's grant of benefits pursuant to Section 401(d)(1) of the Law, but reversed the Referee's grant of

---

[2] Claimant underwent surgery on June 29, 2013 for her condition.

benefits pursuant to Section 402(e) of the Law, stating that the Referee erred by using Employer's failure to immediately enforce one policy to assume that Claimant was free to violate other policies, and because Claimant failed to show good cause for violating Employer's policies.[3]  Claimant appealed to this Court.[4]

Claimant argues that the UCBR erred by concluding that Claimant engaged in willful misconduct.  We disagree.  Section 402(e) of the Law provides that an employee will be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work . . . ."  43 P.S. § 802(e).  Although not defined in the Law, our courts have described "willful misconduct" as:

> (1) a wanton or willful disregard for an employer's interests; (2) a deliberate violation of an employer's rules; (3) a disregard for standards of behavior which an employer can rightfully expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Phila. Parking Auth. v. Unemployment Comp. Bd. of Review*, 1 A.3d 965, 968 (Pa. Cmwlth. 2010).  "When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation."  *Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012).  "Once the employer has met its initial burden, the burden then shifts to the claimant to show either that the rule is unreasonable or that claimant had good cause for violating the

---

[3] Claimant's request to the UCBR for reconsideration was denied by operation of law because the UCBR failed to act during the time that it retained jurisdiction over this matter.  *See* C.R. Item 16.

[4] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence."  *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486 n.2 (Pa. Cmwlth. 2014).

5

rule." *Cnty. of Luzerne v. Unemployment Comp. Bd. of Review*, 611 A.2d 1335, 1338 (Pa. Cmwlth. 1992).

The law is well established that:

> [T]he [UCBR] is the ultimate fact-finder in unemployment compensation matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted). This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

Here, the record evidence supports the UCBR's findings that Employer had a rule that required Claimant to immediately contact Park if she became sick at work, and Claimant's failure to do so could result in her discharge. Claimant admitted those facts. Claimant also admitted that she did not contact Park before she left work on June 15, 2013. With this evidence, Employer met its burden of proof, which then shifted the burden to Claimant to show either that the work rule was unreasonable or that she had good cause for violating it. However, Claimant supplied no good cause for failing to contact Park on June 15, 2013, as required by Employer's

work rule.  Accordingly, the UCBR did not err by concluding that Claimant engaged in willful misconduct.

Claimant next avers that the UCBR erred in not finding Employer's work rule unreasonable.  We disagree.  Claimant offered no evidence at the Referee hearing that Employer's work rule was unreasonable.  Notwithstanding her claims that Employer did not operate by the Employee Handbook, and that Park could be difficult to reach at times, not once during the Referee hearing did Claimant present any evidence that Employer's work rule was unreasonable.  Claimant had the burden to establish that Employer's rule was unreasonable and she presented no evidence to meet that burden.  Thus, the UCBR did not err by failing to make such a finding.

Claimant also asserts that the UCBR erred by disregarding evidence that Claimant was given permission to leave work.  We disagree.   The UCBR did not disregard such evidence, but rather limited its review to the parties' relative burdens.  Employer had to prove the existence of the rule and its violation.  Claimant's testimony itself established Employer's case.  Thus, in order to be eligible for UC benefits, Claimant had to prove that she had good cause for her work rule violation.  She offered no proof to that effect.  Although Employer did not dispute that Lee permitted Claimant to leave early on June 15, 2013, that fact is not relevant to whether Claimant had good cause for violating Employer's work rule.

Lee's permission did not rise to the level of good cause for violating Employer's work rule under the facts of this case.  As Claimant admitted, Employer's policy mandated that she immediately call Park if she became sick at work.  The specific work rule at issue did not delegate authority to a manager.[5]  Claimant did not

---

[5] Reference in the Employee Handbook acknowledgement that Claimant contact the president or other management employee with questions about the Handbook is not evidence that a manager has the power to unilaterally change the substance of any of the work rules therein.  In fact, Section 1 of the Employee Handbook clearly states: "No oral statements or representations can change the provisions of this Employee Handbook."  N.T. Employer Ex. 1, Section at 2.

7

present evidence that Employer tolerated a different procedure. Claimant testified that she sometimes called Brian Park when Park was unavailable, and that Lee was authorized to act if Brian Park could not be reached. However, in this specific case, Claimant admitted she did not call Park and offered no evidence that she called Brian Park. Moreover, although Claimant maintains on appeal that she observed Lee call Park on June 15, 2013, and that Lee was unable to reach Park, the record does not support that rendition of events. Rather, in response to the question, "You did not call [Park] that day that you left?," Claimant responded: "No. [Lee] called her." N.T. at 22. Finally, the record is devoid of any evidence that Claimant was unable to call Park herself, that Lee did not reach Park when he called, that attempts were made by anyone to reach Brian Park, or that Lee was authorized to permit Claimant to leave under the circumstances. Thus, based on the record evidence, the fact that Claimant was given permission to leave work did not prove good cause for violating Employer's work rule.

Lastly, Claimant argues that the UCBR erred by determining that Claimant's physical condition on June 15, 2013 did not constitute an emergency. We disagree. There is nothing in Claimant's testimony to suggest that due to her physical condition, she was unable to call Park before she left work on June 15, 2013. As the UCBR found, Claimant worked most of her shift, and there was nothing in the record to support that she left under any sort of exigent circumstances. The mere fact that Claimant underwent surgery two weeks later for the condition that resulted in her early departure on June 15, 2013 does not support a conclusion that Claimant was unable to contact Park on June 15th in accordance with Claimant's work rule. Thus, based upon this record, the UCBR did not err by determining that Claimant's physical condition did not constitute an emergency.

Viewing the evidence in a light most favorable to Employer who prevailed below on the issue of Claimant's willful misconduct, as we must, and

8

having found that there is substantial evidence to support the UCBR's findings, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah M. Spruiel,                          :
                       Petitioner            :
                                             :
          v.                                 :
                                             :
Unemployment Compensation                    :
Board of Review,                             :        No. 2133 C.D. 2013
                       Respondent            :

O R D E R

AND NOW, this 12th day of August, 2014, the Unemployment Compensation Board of Review's November 8, 2013 order is affirmed.

_____
ANNE E. COVEY, Judge